UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
ex rel. JACQUELINE CUSHING,

    Plaintiff,

v.                          Case No. 8:19-cv-2997-VMC-TGW

RAJEN SHAH, et al.,

    Defendants.
_____/

**ORDER**

    This matter is before the Court on consideration of Defendant Rajen Shah's Motion to Vacate Final Default Judgment (Doc. # 99), filed on October 2, 2024. The United States of America responded in opposition on October 23, 2024. (Doc. # 102). For the reasons that follow, the Motion is denied.

**I.   Background**

    On December 6, 2019, Relator Jacqueline Cushing filed a qui tam complaint against Mr. Shah and several businesses, asserting three Federal False Claims Act counts: one Florida False Claims Act count, one Tennessee Medicaid False Claims Act count, and one Tennessee False Claims Act count. (Doc. # 1). In part, Relator alleged that Mr. Shah was "defrauding

Medicare, Medicaid and other healthcare programs through the Defendant laboratories he owns and operates." (Id. at 2).

According to Mr. Shah, he "engaged attorney Mark Thomas of Thomas Health Law Group, PA to represent [him] in connection with the legal issues raised in this case and related matters." (Doc. # 99 Ex. 8 at ¶ 4). Mr. Thomas did not enter a notice of appearance on the docket in the span of this case. However, Mr. Shah indicates that Mr. Thomas advised and billed him on matters relating to this action. (Doc. # 99 Exs. 1-7). Mr. Shah's Motion includes an invoice from Thomas Health Law, PA billing for services relating to this case during August 2022. (Doc. # 99 Ex. 1).

On August 9, 2022, the United States filed its complaint in intervention. (Doc. # 24). In it, the United States asserted the following counts against Mr. Shah: one count of presenting false claims, one count of making and using false records and statements to get false claims paid, and one count of avoiding an obligation to refund under the False Claims Act ("FCA"), 31 U.S.C. § 3729, as well as one count of unjust enrichment. (Id. at 39-44). The United States further alleged that "rather than perform the standard urinalysis ordered by the providers, [Mr.] Shah direct[ed] the laboratories to perform (and bill for) the much more profitable Urine PCR

test." (Id. at 2-3). The United States served the defendants with the complaint and filed a waiver of service as to all defendants, including Mr. Shah. (Doc. # 51). Mr. Thomas signed the waiver, and the answer was due on November 21, 2022. (Id.). However, an answer was not filed.

After serving discovery on the defendants and not receiving any responses, the United States filed a motion to compel discovery. (Doc. # 56). Mr. Shah again did not respond, although the certificate of service states that the motion was served upon Mr. Thomas by email. (Id. at 7).

The United States filed a motion for entry of clerk's default on November 23, 2022, and the certificate of service indicates that this motion was also served upon Mr. Thomas by email. (Doc. # 57). The Clerk entered default against Mr. Shah on November 28, 2022.(Doc. # 59). On December 21, 2022, the United States subsequently filed its motion for default judgment (Doc. # 67), to which Mr. Shah did not respond.

On January 20, 2023, Mr. Thomas emailed Mr. Shah "keeping [him] updated as to [the United States'] pleadings in the Cushing case" and "highly recommend[ing] that none of the named defendants maintain ownership of any assets that can be seized." (Doc. # 99 Ex. 5). Mr. Shah's Motion indicates that he and Mr. Thomas again communicated by email regarding this

case in June 2023. (Doc. # 99 Ex. 6). In part, Mr. Thomas wrote that he had "expected a default judgment," and that Mr. Shaw had "assured [him] that none of the named defendants in the attached lawsuit had any assets, so the judgment would be essentially meaningless." (Id.).

On August 23, 2023, Magistrate Judge Thomas G. Wilson entered a Report and Recommendation that the motion for default judgment be granted and damages be awarded to the government against Mr. Shah in the amount of $105,634,097.50. (Doc. # 74 at 26). The Report and Recommendation thoroughly discussed Mr. Shah's failure to appear or respond, the United States satisfying the elements of the three FCA counts against Mr. Shah, and the damages Mr. Shah would owe. (Id. at 4, 7-20, 26). On August 24 and 25, 2023, the United States served copies of the Report and Recommendation upon Mr. Shah's wife at their home and Mr. Thomas respectively. (Doc. # 77). According to Mr. Shah, Mr. Thomas billed him for reviewing the Report and Recommendation on August 25, 2023. (Doc. # 99 at 12; Doc. # 99 Ex. 7). Although the Report and Recommendation advised that any objections must be filed within fourteen days (Doc. # 74 at 27), Mr. Shah did not object. On September 21, 2023, the Court adopted the Report

and Recommendation and granted the United States' motion for default judgment. (Doc. # 78).

On October 5, 2023, the United States filed its motion for entry of final default judgment against Mr. Shah in the amount of $105,634,097.50. (Doc. # 79). The motion stated that "the United States conferred with counsel for the defendants who advised that the 'defendants will not take a position as to the [m]otion.'" (Id. at 2). The certificate of service again stated that the motion had been served upon Mr. Thomas by email. (Id. at 3). And Mr. Shah again did not respond nor otherwise appear. Thus, final default judgment was entered against the defendants, including Mr. Shah, on October 10, 2023. (Doc. # 80).

Now, just under a year later on October 2, 2024, Mr. Shah moves to vacate the default judgment entered against him. (Doc. # 99). Specifically, he claims that:

> his prior counsel in this case (1) never appeared in this action despite the fact that it was pending for nearly four years prior to the Default Judgment; (2) provided legal advice regarding asset protection, which was outside of counsel's expertise, demonstrably grossly incorrect, and could have exposed Mr. Shah to criminal liability, and (3) recklessly advised Mr. Shah that allowing the Default Judgment to be entered uncontested would cause Mr. Shah no further legal or financial trouble concerning the issues and allegations that arose within this case.

5

(Id. at 1-2). The United States has responded (Doc. # 102), and the Motion is ripe for review.

## II.  **Legal Standard**

Mr. Shah seeks to vacate the Court's default judgment pursuant to Federal Rules of Civil Procedure 60(b) and 55(c). (Doc. # 99 at 7-8, 12-15, 24).

"The Court may set aside an entry of default for good cause, and it may set aside final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). That is, a default judgment may be set aside under the provisions of Rule 60(b), while an entry of default may be set aside under the provisions of Rule 55(c).

Rule 60(b)(1) allows a court to set aside a default judgment based on "mistake, inadvertence, surprise, or excusable neglect." "To establish mistake, inadvertence, or excusable neglect under Rule 60(b)(1), a defaulting party must show that: '(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint.'" Valdez v. Feltman (In re Worldwide Web Systems, Inc.), 328 F.3d 1291, 1295 (11th Cir. 2003). "[T]he determination of excusable neglect is an equitable one that should take into

6

account the totality of the circumstances surrounding the party's omission." Safari Programs, Inc. v. CollectA Int'l Ltd., 686 F. App'x 737, 744 (11th Cir. 2017). Moreover, a motion under Rule 60(b)(1) "must be made within a reasonable time," not to exceed one year after the entry of the judgment. Fed. R. Civ. Pro. 60(c)(1).

Alternatively, Rule 60(b)(6) permits vacatur of a final default judgment if there is "any other reason that justifies relief." The Eleventh Circuit "consistently has held that 60(b)(1) and (b)(6) are mutually exclusive. Therefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." Safari Programs, Inc., 686 F. App'x at 746 (citation omitted). Moreover, "claims of attorney error must be made under the more specific Rule 60(b)(1), rather than under the 'residual equitable authority' contained in Rule 60(b)(6)." S.E.C. v. Simmons, 241 F. App'x 660, 663 (11th Cir. 2007).

Rule 55(c) allows the court to set aside an entry of default for "good cause." The "good cause" standard of Rule 55(c) is more lenient than the "excusable neglect" standard applied to Rule 60(b)(1). See EEOC v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990) ("The excusable neglect standard that courts apply in setting aside a default

7

judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default.").

Here, a final default judgment has been rendered against Mr. Shah. (Doc. # 80). Therefore, at this juncture, Mr. Shah needs to meet one of the bases for relief under Rule 60(b)(1) to have the default judgment vacated. See Friedman v. Schiano, No. 16-CV-81975, 2017 WL 11487874, at *3 (S.D. Fla. Nov. 14, 2017) (concluding that Rule 60(b) is "the proper rule for vacating the judgments" where defendant moved to vacate under both Rules 55(c) and 60(b)), aff'd, 777 F. App'x 324 (11th Cir. 2019).

The Eleventh Circuit "notes that defaults are seen with disfavor because of the strong policy of determining cases on their merits." Fla. Physician's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993). Rule 60(b) therefore "seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" Aldana v. Del Monte Fresh Produce N.A., Inc., 741 F.3d 1349, 1355 (11th Cir. 2014) (citation omitted).

III. **Analysis**

A.   **Timeliness**

In assessing the timeliness of a motion to set aside a final judgment under Rule 60(b)(1), the Court makes two determinations. "Motions under Rule 60(b)(1), (2), or (3) 'must be made within a reasonable time' and be made 'no more than a year after the entry of judgment or order, or the date of the proceeding.'" Kerruish v. Essex Holdings, Inc., 839 F. App'x 428, 431 (11th Cir. 2021) (affirming denial of motion to vacate filed just under a year after entry of judgment because the delay was nevertheless unreasonable). Therefore, even when the one-year period has not lapsed, the Court may still reject a motion as untimely if it was not filed within a reasonable time. Id. at 431-32 ("Thus the 'motion may be rejected as untimely if not made within a 'reasonable time' even though the one-year period has not expired.'" (citation omitted)).

Mr. Shah submits that his Motion is timely filed. Indeed, he "notes that [his] motion is being filed well within the one-year period prescribed by [Rule] 60(c)(1), which, regardless, only applies strictly to [Rule] 60(b)(1), (2), and (3), and not [Rule] 60(b)(6)." (Doc. # 99 at 8). Mr. Shah is correct that when his Motion was filed on October 2, 2024,

9

a year had not yet passed since the final default judgment was entered on October 10, 2023.

Nevertheless, the almost one-year delay in filing this Motion was unreasonable. Mr. Shah's justification for the delay is that he "needed time to seek out and retain counsel, consider the seriousness of raising issues with Mr. Thomas's representation, and ascertain whether the claim for relief was viable, which Mr. Shah has determined with counsel that it is." (Id.). A more than eleven-month delay is excessive and unjustified.

Indeed, the Eleventh Circuit has "held on numerous prior occasions that an inexplicable delay in filing a motion to vacate after learning of a default judgment precludes relief under 60(b)(1)." Simmons, 241 F. App'x at 664 (affirming denial of motion to vacate where the defendant "inexplicably waited over four months to file" and merely "allege[d] that it took this long for his new counsel to become familiar with the case"); see also Valdez, 328 F.3d at 1298 (affirming denial of motion to vacate where party waited two months to file); Mike Smith Pontiac GMC, 896 F.2d at 529 (affirming denial of motion to set aside default where party waited almost four months to file). Mr. Shah's delay was even "longer, and equally inexplicable." Simmons, 241 F. App'x at

664. Thus, the Court concludes that Mr. Shah's Motion was untimely and must be denied on that basis.

**B.   <u>Rule 60(b)</u>**

Even if Mr. Shah's Motion had been timely filed, he has not established that vacatur of the default judgment is warranted.

Mr. Shah alleges that vacatur is proper based on excusable neglect. (Doc. #99 at 12); <u>see</u> Fed. R. Civ. P. 60(b)(1). "[A] determination of excusable neglect is an equitable one that necessarily involves consideration of all three elements — a meritorious defense, prejudice, and a good reason for not responding to the complaint." <u>Valdez</u>, 328 F.3d at 1297.

"In the first place, [Mr. Shah] has not shown a good reason for failing to reply to the complaint." <u>Simmons</u>, 241 F. App'x at 663. The Eleventh Circuit "has demonstrated its wariness of grants of Rule 60(b)(1) relief for excusable neglect based on claims of attorney error." <u>Cavaliere v. Allstate Ins. Co.</u>, 996 F.2d 1111, 1115 (11th Cir. 1993). Accordingly, an attorney's mistakes of law, rather than of fact, do not constitute excusable neglect. <u>Safari Programs, Inc.</u>, 686 F. App'x at 744 ("This Circuit recognizes that an attorney's failure to understand or review clear law

11

categorically cannot constitute excusable neglect."). In addition, "a party has a duty to monitor the progress of his case" and "must demonstrate his own diligence, even where the attorney commits gross misconduct." Simmons, 241 F. App'x at 664.

The Court is not persuaded by Mr. Shah's reasons for failing to answer the complaint or otherwise appear in this case. Mr. Shah's justification is that he relied on his attorney's "grossly negligent advice." See (Doc. # 99 at 12-15). According to Mr. Shah, he was advised "that allowing the default judgment to be entered uncontested would be in Mr. Shah's best interest and that it would cause no further legal or financial trouble." (Id. at 13).

Mr. Shah's Motion cites a few cases to establish that "his reliance on the advice of his prior counsel, Mr. Thomas, constitutes excusable neglect." (Doc. # 99 at 12). However, those cases do not support his position. In Connecticut State Dental Association v. Anthem Health Plans, the plaintiffs' failure to respond was "a result of [the attorneys'] single failure to file appearances on the tag along dockets" and mistaken belief that they were receiving case notifications. 591 F.3d 1337, 1355-56 (11th Cir. 2009). Moreover, "the delay was brief," as the plaintiffs' motions to vacate were filed

ten days after the district court entered the dismissal orders. Id. Next, in Bateman v. United States Postal Service, the plaintiff's attorney failed to respond to a summary judgment motion that was allegedly filed while he was out of the country and unaware. See 231 F.3d 1220, 1223 (9th Cir. 2000). The Ninth Circuit determined that vacatur was proper considering the minimal prejudice to the defendant, that the attorney's "errors resulted from negligence and carelessness, not from deviousness or willfulness," and that the attorney promptly took action to vacate. Id. at 1224-25.

These cases, involving inadvertent or careless mistakes and prompt rectification, are vastly different from Mr. Shah's case where he knowingly defaulted. Rather, Mr. Shah's situation is more akin to the facts in United States v. Britton-Harr, No. CV LELH-23-01921, 2024 WL 4434861 (D. Md. Oct. 7, 2024) (denying timely motion to vacate a default judgment that was entered a month prior). There, "[n]otably, defendant [did] not claim that he was unaware of the suit, the Order of Default, or the government's Motion for Default Judgment." Id. at 10. The Britton-Harr Court thus denied the motion, holding that "defendant's failure to respond to the suit was knowing, purposeful, and willful." Id. at 11.

13

Next, the Court considers whether vacating the default judgment would prejudice the United States. A defaulting party must show that "granting the motion would not result in prejudice to the non-defaulting party." Valdez, 328 F.3d at 1295 (citation omitted). "[S]imple delay is insufficient for prejudice as is requiring a party to prove its case on the merits." Coniglio v. Bank of Am., NA, 638 F. App'x 972, 975 (11th Cir. 2016) (finding no prejudice because the mere days "length of delay was small"). "Thus, to constitute prejudice, the delay must 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" Britton-Harr, 2024 WL 4434861 at 13 (citing Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983)).

Mr. Shah's delay in moving to set aside his default judgment was significant. Again, Mr. Shah filed his Motion almost a year after the final default judgment. This Motion was thus filed more than two years after the United States filed its intervenor complaint on August 9, 2022, and almost five years after the original qui tam complaint was filed on December 6, 2019. As the United States points out, "evidence and testimony has grown stale; memories fade and documents

(including relevant requisition orders and patient files) can go missing." (Doc. # 102 at 8-9).

More importantly, the United States notes that Mr. Shah's admitted transfer of assets has already hindered the government's ability to collect. (Id. at 9). The United States' concern that reopening the case would allow Mr. Shah to further dissipate his assets and impede the government's ability to collect is therefore not unfounded. (Id.); see Britton-Harr, 2024 WL 4434861 at 13 ("Defendant's actions in this case have demonstrated that the Government's concern about Britton-Harr's dissipation of assets, thereby hampering the Government's ability to recover for its losses, is not unfounded.").

Finally, the Court considers whether Mr. Shah has alleged a potentially meritorious defense. A party seeking to set aside a default judgment under Rule 60(b)(1) "must make an affirmative showing of a defense that is likely to be successful" and that "would probably change the outcome of the case." Valdez, 328 F.3d at 1296-97 (citation omitted). The movant must establish the meritorious defense "by a clear and definite recitation of facts." Gibbs v. Air Can., 810 F.2d 1529, 1538 (11th Cir. 1987). General denials are not enough. See Valdez, 328 F.3d at 1296; Simmons, 241 F. App'x at 664.

Mr. Shah's Motion broadly raises the defenses of (1)
failure to state a claim, (2) mistake of fact, (3) lack of
scienter and compliance with physician orders, (4) reasonable
reliance on government guidelines, (5) good faith and lack of
fraudulent intent, and (6) no unjust enrichment.[1] (Doc. # 99
at 19-21). However, Mr. Shah's Motion offers little more than
general denials in support of his asserted defenses. (Id.).
For example, Mr. Shaw merely affirms that "many of the factual
allegations in the Report and Recommendation . . . are either
factually inaccurate or subject to strong, evidence-based
refutation." (Doc. # 99 Ex. 8 at ¶ 14). However, he does not
indicate what evidence would allegedly refute the factual
allegations and, even so, how such refutation would change
the outcome of the case.

In the Report and Recommendation, Magistrate Judge
Wilson explained how the United States satisfied the elements
of the three FCA claims against Mr. Shaw. Contrary to Mr.
Shah's alleged defenses and factual refutations, the Report
and Recommendation considered evidence of fraud, including

---

[1] As explained in the Report and Recommendation, because judgment was
entered on the government's FCA claims, the government's alternative
common law unjust enrichment claim was not considered. (Doc. # 74 at
20). Nevertheless, Mr. Shaw's Motion submits a general denial as a
defense to that claim.

communications from healthcare providers admonishing Mr. Shah for the erroneous tests. (Doc. # 74 at 13-16). Indeed, Magistrate Judge Wilson correctly concluded that the United States "provided ample evidence that the defendants made false claims to Medicare for reimbursement, even after they had been repeatedly warned the claims were false." (Id. at 16). The Court therefore determines that Mr. Shah has failed to raise a potentially meritorious defense.

Even if Mr. Shah had sufficiently alleged a meritorious defense, the Court would nevertheless deny the Motion. Considering the totality of the circumstances — that is, Mr. Shah's knowing failure to respond or appear, his excessive and unjustified delay in seeking vacatur, and the resulting prejudice to the government – Mr. Shah has not established that vacatur of the default judgment is warranted. See, e.g., Dunn v. Prudential Ins. Co. of Am., No. 8:10-CV-1626-T-24TGW, 2011 WL 1298156, at *2 (M.D. Fla. Apr. 4, 2011) (denying motion to vacate despite concluding "that [defendant] at least has stated defenses that would, if proven, affect the outcome of this case").

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Rajen Shah's Motion to Vacate Final Default Judgment (Doc. # 99) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 23rd of December, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE